# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

---

JESUS MANUEL GALLEGOS,

    Petitioner,

v.                                                           No. 1:17-cv-00909 WJ/SMV
                                                                                               1:11-cr-02994 WJ/SMV

UNITED STATES OF AMERICA,

    Respondent.

## MEMORANDUM OPINION AND ORDER
## DISMISSING HABEAS PETITION

Before the Court is Jesus Manuel Gallegos' Motion to Vacate Sentence Under 28 U.S.C. § 2255 (CR Doc. 283).[1] Gallegos seeks to vacate his conviction and sentence for kidnapping based on ineffective assistance of counsel and actual innocence. Having reviewed the record, the supplemental materials filed by the United States, and the relevant law, the Court will dismiss the Motion and deny a certificate of appealability.

## BACKGROUND

The criminal proceeding began in late 2011, after Gallegos and his co-conspirator, Brandon Jones, purportedly forced a man into a vehicle and terrorized him for hours. The record reflects Gallegos assaulted the victim, pressed his thumb into his left eye, and withdrew money from several of the victim's bank accounts. Jones eventually pulled over at a truck stop, where both he and Gallegos fell asleep. The victim then escaped from the vehicle and called police.

Gallegos was charged by Indictment of kidnapping in violation of 18 U.S.C. § 1201(a). Attorney Todd Farkas was appointed on November 7, 2011 to represent Gallegos pursuant to the

---

[1] All document references pertain to the criminal case, No. 11-cr-02994.

Criminal Justice Act (CJA). Gallegos clashed with Farkas - who was his first of four attorneys - within about six months. He filed a motion to appoint new counsel on May 31, 2012, but then withdrew it seven weeks later, stating: "I am satisfied with the representation by Mr. Todd E. Farkas." (Doc. 51). Around the same time, Farkas engaged Dr. Samuel Roll to perform a psychological assessment of Gallegos. Farkas also obtained an order directing the New Mexico Corrections Department to disclose Gallegos' previous state court diagnostic evaluation.

Dr. Roll issued his report on September 24, 2012. He found Gallegos had no serious mental illness and was competent to stand trial, but opined that a number of mitigating psychological problems could impact sentencing, rehabilitation, and the potential for violence. Farkas disclosed the report to the United States and requested a plea agreement with a sentence range between five and ten years. The United States rejected the offer and indicated it was unwilling to enter into any plea agreement with Gallegos or Jones.

On January 3, 2013, Gallegos pled guilty to all charges in the Indictment. As part of the plea colloquy, which is discussed in more detail below, Gallegos stated he understood all charges and consequences and was satisfied with Farkas' legal advice. By February 25, 2013, however, the relationship had again fractured, and Farkas moved to withdraw on the grounds that Gallegos did not trust his advice. Two weeks later, Gallegos changed his mind and Farkas withdrew the motion. Finally, on April 24, 2013, Attorney Jerry Herrera was substituted as counsel for Gallegos.

Herrera handled the sentencing proceedings. He challenged the proposed sentence enhancements and advocated for a downward adjustment on the theory that Gallegos played a mitigating role in the kidnapping. After a half-day evidentiary hearing, the Court rejected Herrera's arguments and found Gallegos was subject to sentence enhancements for permanently

damaging the victim's eye and using a dangerous weapon. Gallegos was sentenced to 360 months imprisonment. Herrera assisted Gallegos in initiating an appeal but then withdrew.

The Tenth Circuit appointed Gallegos' third attorney, Thomas Jameson, to prosecute the appeal. He was partially successful, and the Tenth Circuit remanded the case for clarification as to whether a two-level or four-level sentencing enhancement was appropriate based on the severity of the victim's eye injury. The parties agreed to the two-level enhancement, and Jameson also requested a downward variance based on a lower criminal history calculation. Applying the criteria set forth in 18 U.S.C. § 3553(a), the Court rejected Jameson's arguments and imposed the same sentence of 360 months.

Gallegos again appealed. Jameson withdrew, and the Tenth Circuit appointed Gallegos' fourth and final attorney, Gregory Acton. Shortly thereafter, Acton filed an *Anders* brief and moved to withdraw based on his assessment that the appeal presented no non-frivolous issues. *See Anders v. California*, 386 U.S. 738, 744 (1967). On August 2, 2016, the Tenth Circuit issued a mandate granting the motion and dismissing the appeal as "wholly frivolous."

Gallegos, proceeding *pro se,* now seeks to vacate the conviction and sentence on the basis of ineffective assistance of counsel and actual innocence. The Motion raises ten grounds for relief, although several are duplicative:

(*Claims 1, 4, and 5*) Counsel failed to request a competency hearing based on Gallegos' drug and alcohol abuse or pursue remedies such as an insanity defense;

(*Claim 2*) Counsel promised Gallegos he would serve less than 360 months if he pled guilty;

(*Claim 3*) Counsel failed to protect Gallegos' right to a speedy trial;

(*Claim 6*) Counsel failed to prepare for trial;

3

(*Claim 7*) Counsel failed to investigate exculpatory information supporting his innocence;

(*Claim 8*) Counsel failed to "make informed decisions and [made] too many errors;"

(*Claim 9*) Counsel failed to challenge the Indictment or demand a probable cause hearing; and

(*Claim 10*) Counsel failed to challenge the sentence enhancements.

The United States filed an answer to the Motion with supporting supplemental materials. Gallegos did not file a reply.

## DISCUSSION

A petition under 28 U.S.C. § 2255 attacks the legality of a federal prisoner's detention. *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Relief is available where "the sentence was imposed in violation of the Constitution or laws of the United States," including the Sixth Amendment right to effective counsel. 28 U.S.C. § 2255(a). *See also U.S. v. Tucker,* 745 F.3d 1054, 1066 (10th Cir. 2014) ("Sixth Amendment claims asserting ineffective assistance of counsel can and generally must be brought in a habeas action for post-conviction relief under 28 U.S.C. § 2255.").

A successful ineffective assistance of counsel claim must meet the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). First, the petitioner must show "[c]ounsel's performance was deficient" and contained "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 688. In other words, the representation must fall below an objective standard of reasonableness based on prevailing professional norms. *Id.* at 687–88. The Court is required to "eliminate the distorting effects of hindsight" and "indulge a strong presumption that counsel acted reasonably." *Welch v. Workman,* 639 F.3d at 980, 1012 (10th Cir. 2011) (quotations omitted).

The second prong of *Strickland* requires the petitioner to affirmatively prove the deficient performance prejudiced the defense. *Battenfield v. Gibson,* 236 F.3d 1215, 1234 (10th Cir. 2001) (citing *Strickland,* 466 U.S. at 693-693). In the context of pleas, the petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). *See also Lafler v. Cooper,* 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different with competent advice").

1. An Evidentiary Hearing Is Not Required

As an initial matter, Gallegos requests an evidentiary hearing to determine ineffective assistance of counsel and actual innocence. An evidentiary hearing is only required where the petitioner's specific allegations create disputed fact issues regarding the § 2255 claims. *See United States v. Gallegos*, 459 Fed. App'x. 714, 716–17 (10th Cir. 2012); *Brecheen v. Reynolds*, 41 F.3d 1343, 1362 (10th Cir. 1994). District courts need not hold evidentiary hearings "without a firm idea of what the testimony will encompass and how it will support a movant's claim." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). Moreover, no evidentiary hearing is required where the motion is "based on mere conclusory assertions that contradict earlier statements made under oath." *United States v. Weeks*, 653 F.3d 1188, 1205 (10th Cir. 2011).

As discussed below, Gallegos' claims relating to the plea, competency, sentencing issues, and actual innocence are clearly belied by the record, and the remaining claims lack supporting factual averments. Gallegos also fails to identify the evidence he would proffer at a hearing or explain how the alleged errors tainted his plea. Therefore, after reviewing the extensive record in this case, the Court concludes an evidentiary hearing is not warranted.

5

### 2. Claims 1, 2, 4, and 5: Understanding the Plea and its Consequences

Gallegos' primary complaint is that Farkas did not sufficiently explain the plea or any possible penalties. Due process requires that a guilty plea be "voluntary and knowing." *Boykin v. Alabama*, 395 U.S. 238, 243 n. 5 (1969). "[T]he longstanding test for determining the validity of a guilty plea ... is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Tovar Mendoza v. Hatch*, 620 F.3d 1261, 1269 (10th Cir. 2010) (quotations omitted). "A guilty plea … can be challenged … if it develops that the defendant was not fairly apprised of its consequences." *Id.* (quoting *Mabry v. Johnson*, 467 U.S. 504, 509 (1984)).

"The procedures under which a challenged plea was taken play an important, but not decisive, role in determining the validity of the plea." *Tovar,* 620 F.3d at 1269. The petitioner's "[s]olemn declarations in open court carry a strong presumption of veracity" and "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Accordingly, the Tenth Circuit consistently "denie[s] relief under … § 2255 to petitioners alleging that their guilty pleas were the product of ineffective assistance when their plea colloquies demonstrated otherwise." *Holt v. Brace,* 418 Fed. App'x 697, 701 (10th Cir. 2011) (collecting Tenth Circuit cases). To contradict the sworn statements at a plea hearing, the § 2255 petition must include particularized factual averments "justifying departure from the[] apparent truth" of the earlier remarks. *U.S. v. Sanchez*, 105 F.3d 670 (10th Cir. 1997) (quoting *U.S. v. Bambulas*, 571 F.2d 525, 526 (10th Cir. 1978)). *See also U.S. v. Hutchinson,* --- Fed. App'x ---, 2018 WL 619679 (10th Cir. 2018) (dismissing an appeal where the petitioner "acknowledged … during the plea colloquy that his entry into the plea agreement was knowing and voluntary, and … has not presented any evidence to the contrary").

The record here clearly demonstrates that Farkas advised Gallegos of the import and potential consequences of the guilty plea. Ten weeks before the plea hearing, Farkas explained:

> "[Y]our Guidelines Sentence Range does not change if you plead guilty or go to trial. The only difference between trial and a guilty plea will be [the Court's] attitude toward you. If you want any chance at leniency from [the Court], then a guilty plea would be the best way to proceed. Considering what we know about [the Court], it would be difficult to obtain a sentence of less than 30 years [*i.e.* 360 months], with your criminal background."

(Doc. 296-2, p. 37). That number – which reflects the exact sentence Gallegos later received – is the only concrete estimate in the record. Farkas reiterated his advice in November and December of 2012, and added: "Even with a guilty plea, it will be difficult to convince [the Court] that you should not be sent to prison for a long time." (Doc. 296-3, p. 1, 7).

The plea colloquy also demonstrates, in exhaustive detail, that Gallegos was competent, content with counsel, and aware of all charges and consequences. The Court asked over fourty-five separate questions confirming that Gallegos:

- Had not been recently treated for any mental illness or addiction of any kind, and was not under the influence of any drug, medication, or alcoholic beverage;

- Discussed the charges with Farkas, understood the charges, and was satisfied with the legal representation and advice he received in the case;

- Voluntarily decided to plead guilty, had not been forced, threatened, harassed, or intimidated into the decision, and understood he had an absolute right to proceed to trial;

- Understood that the "worst case scenario" penalty would be life in prison, plus additional fines and up to five years of supervised release; and

- Understood that the United States Sentencing Guidelines would apply to his case, that his criminal history would impact sentencing, and that the Court could deviate from the

Guidelines based on the Presentence Report.

(Doc. 167, p. 1-12).

Gallegos gave cogent answers to each question, stating "Yes," "No," or mostly commonly, "I understand, Your Honor." *Id.* Following this exchange, the Court found that the plea was knowing and voluntary. (Doc. 167, p. 24). The Motion's conclusory, amorphous references to "constant stress," "duress," "mental instability," and "drug and alcohol addictions" are insufficient to contradict the comprehensive record made at the plea hearing. (Doc. 283, p. 3). *See also U.S. v. Sanchez*, 105 F.3d 670 (10th Cir. 1997) (Rejecting "[d]efendant's conclusory allegations ... which contradict the record made at the plea hearing"). The Court concludes Farkas effectively apprised Gallegos of all charges and potential consequences, and that the plea was voluntary and knowing.

    3.    <u>Claims 1, 4, and 5: Competency and Related Defenses</u>

Construed liberally, Claims 1, 4, and 5 also appear to relate to Gallegos' allegation that Farkas failed to request a competency hearing and pursue an insanity defense based on his drug and alcohol problems. A competency hearing is only held where there is reasonable cause to believe the defendant is unfit to stand trial, typically based on a psychological evaluation. *See* 18 U.S.C. § 4241(a) (setting forth the requirements for holding a competency hearing); 18 U.S.C. § 4241(b) (permitting the Court to order a pre-hearing psychological evaluation). Such hearing is not required where the evaluation reveals the defendant is able "to understand the nature and consequences of the proceedings" and "assist …in the defense." 18 U.S.C. § 4241(a). *See also U.S. v. Cornejo-Sandoval,* 564 F.3d 1225, 1235 (10th Cir. 2009) (District courts may forego the competency hearing based on a psychological evaluation); *U.S. v. Rodriguez-Garcia,* 175 F.3d 1021 (7th Cir. 1999) (noting that competency hearings are discretionary depending on the results of

the psychological evaluation).

Gallegos' allegations regarding competency are clearly belied by the record. On June 14, 2012, over six months before the guilty plea, Farkas obtained funds for a psychological evaluation based on Gallegos' twenty-year "history of alcohol and substance abuse." (Doc. 44). Farkas also procured copies of his previous state court evaluations in an effort to bolster any mental health defense. (Docs. 54, 56). Dr. Roll, a board certified psychologist and professor, assessed Gallegos in the summer of 2012 and found that he was "competent to stand trial and otherwise collaborate meaningfully with his attorney." (Doc. 296-2, p. 32). Under these circumstances, Farkas' "decision not to further investigate and pursue [Gallegos'] mental health issues was reasonable." *Lucero v. Medina,* 535 Fed. App'x 769, 770 (10th Cir. 2013) (counsel is not required to pursue a mental health defense where a psychiatrist finds the defendant competent to stand trial).

Further, even if Gallegos could demonstrate deficient performance, he has not established prejudice. To do so, Gallegos must "show[] a reasonable probability he would have been found incompetent to stand trial if counsel had requested and obtained a competency hearing." *U.S. v. Hartman,* 487 Fed. App'x 437, 440 (10th Cir. 2012). *See also Williamson v. Ward*, 110 F.3d 1508 (10th Cir. 1997) (same). Aside from pointing to his drug and alcohol abuse, which is unfortunately a factor in most criminal proceedings, Gallegos does not provide any details that undermine Dr. Roll's assessment or his representations at the plea hearing. *See U.S. v. Hankerson,* 591 Fed. App'x 688, 689 (10th Cir. 2015) (counsel is not ineffective for failing to request a competency hearing where the petitioner "provides no facts that would undermine the district court's reliance on his representations at the plea and sentencing hearings that he was competent"). Gallegos' claims pertaining to competency and mental health therefore fail.

### 4. Claim 7: Actual Innocence and Exculpatory Information

Gallegos next alleges he is innocent, and that Farkas failed to investigate an exculpatory statement where Jones allegedly admitted "to doing the crime independently." (Doc. 283, p. 6). "Counsel has a duty to conduct a reasonable investigation for mitigating evidence or to make a reasonable decision that particular investigation is unnecessary." *James v. Gibson*, 211 F.3d 543, 557 (10th Cir. 2000). Where the alleged error of counsel is a failure to discovery exculpatory evidence, the petitioner must specifically show what information an "adequate" investigation would have produced and how it would have change the outcome of the plea process. *See Hatch v. Oklahoma*, 58 F.3d 1447, 1457 (10th Cir. 1995), *overruled on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir. 2001).

The petition does not meet this standard, as it is unclear when Jones allegedly made the exculpatory statement, to whom the statement was made, and whether counsel had any occasion to know about it. More importantly, Gallegos' sworn statements during the plea colloquy "undermine[] his claim that another individual committed the crime to which he pled guilty." *Johnson v. Medina*, 547 Fed. App'x. 880, 885 (10th Cir. 2013). *See also United States v. McAbee,* 685 Fed. App'x 682, 686 (10th Cir. 2017) (holding that a petitioner's admission of guilt during the plea colloquy is binding where the plea is knowing and voluntary). Gallegos admitted to: (1) being present when Jones forced the victim to enter a vehicle at gun-point; (2) striking the victim, sticking his hands in the victim's mouth, pulling his head back, and pressing his eye; (3) threatening to kill the victim; and (4) trying to flee when the victim escaped and called police. (Doc. 167, p. 18-24). Gallegos' claims pertaining to exculpatory evidence and actual innocence therefore fail.

5. Claim 10: Sentencing Enhancements

Gallegos also claims "[c]ounsel [was] ineffective for not challenging his sentence enhancements … by and through mitigating circumstances." (Doc. 283, p. 7). Once again, this argument is contradicted by the record. The original PSR proposed three enhancements: (1) a four-level increase for inflicting a permanent bodily injury; (2) a two-level increase for using a dangerous weapon; and (3) a four-level increase for robbing the victim during the kidnapping.[2] (PSR, p. 7-8). Herrera (Farkas' replacement) objected to the first two enhancements, arguing the victim "did not sustain a bodily injury within the meaning of 'significant injury'" and that the alleged weapon "is not a real firearm and displays like a toy." (Docs. 137, 168). Herrera also argued for a downward adjustment based on Gallegos' mitigating role, elaborating that he was "so heavily intoxicated and sedated" at the time of the crime, "it's a wonder he was even able to stand up." (Doc. 137, p. 6).

Although Herrera did not object to the robbery enhancement, such decision was objectively reasonable. Gallegos admitted to forcing the victim to withdraw money from his bank accounts, and any objection would undermine that sworn statement and jeopardize Gallegos' three-level decrease for acceptance of responsibility. (Doc. 167, p. 15-20). *See Bullock v. Carver,* 297 F.3d 1036, 1046 (10th Cir. 2002) ("[W]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes virtually unchallengeable.").

Gallegos also received capable assistance at resentencing. Following remand, Jameson

---

[2] Unlike Jones, Gallegos was never subject to a proposed enhancement for unlawfully restraining and abducting the victim. *Compare* Gallegos' PSR and addendums *with* Jones' Fourth Addendum to the PSR, Docs. 263. Gallegos' sentence was therefore not tainted by the double-counting of activities that are already elements of the offense of conviction, or by any other issue that potentially impacted Jones. (Doc. 282).

(Herrera's replacement) negotiated for the lower of the two possible enhancements based on the victim's eye injury. Jameson also requested a de novo resentencing hearing - though the PSR had not materially changed - and argued for a lower criminal history score based on Gallegos' alcoholism. (Doc. 211). While the Court ultimately overruled counsels' arguments, Gallegos failed to demonstrate any deficiency in connection with sentencing.

      6.    <u>Claims 3, 6, 8, and 9: Miscellaneous Pretrial Errors</u>

The remaining claims relate to Farkas' alleged failure to: (1) prepare for trial; (2) "mak[e] informed decisions and [avoid] … many errors that prejudiced [Gallegos'] opportunity for a fair result…;" (3) demand a probable cause hearing; (4) protect his right to a speedy trial; and (5) challenge the Indictment. (Doc. 283, p. 6-7). The first two arguments fail because Gallegos "has not made clear precisely what missteps his attorney[] made." *United States v. Banks,* 355 Fed. App'x 123, 126 (10th Cir. 2009). "Vague statement[s]" that fail to identify "what the errors might be and how they may have affected the outcome of [the] criminal proceeding" are insufficient to establish ineffective assistance of counsel. *United States v. Toombs,* --- Fed. App'x ---, 2017 WL 6048612, * 3 (10th Cir. Dec. 7, 2017).

The third argument is belied by the record, as Magistrate Judge Torgerson made the probable cause finding at a preliminary detention hearing held on November 8, 2011. (Doc. 9). The Speedy Trial argument lacks merit. The trial was continued five times at the Defendants' request for the purpose of investigating a plea agreement and conducting a psychological evaluation. (Docs. 22, 26, 33, 34, 45, 47, 58, 59, 67, and 68). Gallegos cannot condemn this strategic decision while simultaneously arguing that counsel should have negotiated a lower sentence and done more to investigate competency. *See United States v. Ortiz Oliveras,* 717 F.2d 1, 4 (1st Cir.1983) (Strategic decisions only amount to ineffective assistance of counsel when they

were "completely unreasonable, … so that it bears no relationship to a possible defense strategy.").

Finally, Gallegos has not shown an adequate factual or legal basis for challenging the Indictment or suggested how any such motion would have altered his decision to plead guilty. *See Lafler v. Cooper,* 566 U.S. 156, 163 (2012) ("[A] defendant must show the outcome of the plea process would have been different" absent counsel's alleged error). Claims 3, 6, 8, and 9 therefore fail, and the Motion will be dismissed in its entirety.

7. A Certificate of Appealability Will Be Denied

Habeas Corpus Rule 11 provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons explained above, the Court finds that reasonable jurists could not debate the denial of Gallegos' § 2255 motion and, therefore, a certificate of appealability will be denied.

**IT IS THEREFORE ORDERED** that Jesus Manuel Gallegos' Motion to Vacate Sentence Under 28 U.S.C. § 2255 (CR Doc. 283) is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**; and

**IT IS FINALLY ORDERED** that judgment shall be entered in favor of the United States and against Petitioner Jesus Manuel Gallegos.

_____
CHIEF UNITED STATES DISTRICT JUDGE